IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WARREN EVANS
a/k/a JEFFREY JOHNSON,

                Petitioner,

     v.

BOBBI JO SALAMON, et.
al.,

                Respondents.

CIVIL ACTION
NO. 23-3589

## OPINION

**Slomsky, J.**　　　　　　　　　　　　　　　　　　　　**February 10, 2026**

## TABLE OF CONTENTS

I.　**INTRODUCTION**................................................................................................................... 3

II.　**BACKGROUND** ................................................................................................................... 3

III.　**STANDARD OF REVIEW** ............................................................................................... 7

  A.　Magistrate Report and Recommendation.......................................................................... 7

  B.　Merits Review................................................................................................................... 8

  C.　Exhaustion and Procedural Default................................................................................. 10

IV.　**ANALYSIS** .........................................................................................................................11

  A.　Petitioner's Claim that the Lifetime Retroactive Reporting Requirements under
      Subchapter I are Unconstitutional is Meritless .................................................................11

  B.　Petitioner's Claim that Relief for a Constitutional Violation Would Arise
      From His Motion for Expansion of the Record is Meritless............................................. 15

  C.　Petitioner's Contention that the Sentencing Judge Erroneously Made Factual
      Determinations in violation of *Alleyne* is (1) Procedurally Defaulted and (2) Meritless . 17

    1.　Petitioner's *Alleyne* Claim is Procedurally Defaulted ................................................. 18

    2.　Petitioner's *Alleyne* Claim is Also Meritless ............................................................. 22

V.    **CONCLUSION/CERTIFICATE OF APPEALABILITY**................................................ 25

## I.    INTRODUCTION

In 2012, Warren Evans ("Petitioner") was convicted of three crimes involving the sexual abuse of his father's foster daughter when she was between the ages of 8 and 11.  (Doc. No. 32 at 1.)  After his conviction, he became an inmate at State Correctional Institution ("SCI") Rockview in Bellefonte, Pennsylvania, before being transferred to SCI Phoenix in Collegeville, Pennsylvania. (Doc. No. 32 at 1; Doc. No. 53.)

On September 11, 2023, Petitioner filed a pro se Petition for Writ of Habas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 2.)  On October 10, 2023, the Court referred the Petition to United States Magistrate Judge Scott W. Reid for a Report and Recommendation ("R&R").  (Doc. No. 7.)  On June 17, 2024, Petitioner filed a Motion for Expansion of the Record.  (Doc. No. 26.)   This Motion also was referred to Judge Reid.  Before issuing the R&R, he granted Petitioner's Motion for Expansion of the Record, noting that he would "consider the material attached to the Motion as part of the record."  (Doc. No. 31.)   On December 3, 2024, Judge Reid issued his R&R recommending that the Petition be dismissed in part and denied in part, and that a Certificate of Appealability not be issued.  (Doc. No. 32.) Petitioner has filed Objections to the R&R.  (Doc. No. 43.)   For the reasons stated below, the Court will approve and adopt the R&R (Doc. No. 32) and deny the Petition for Writ of Habeas Corpus.[1]  (Doc. No. 2.)

## II.    BACKGROUND

As summarized in the R&R, Petitioner's charges "concerned his sexual abuse of his father's foster daughter when she was between 8 and 11 years old.  At trial, the victim (by that

---

[1]   For purposes of this Opinion, the Court has considered the Petition for a Writ of Habeas Corpus (Doc. No. 2), the Response in Opposition to the Petition (Doc. No. 16), the Report and Recommendation (Doc. No. 32), the Objections to the Report and Recommendation (Doc. No. 43), and the relevant state record (Doc. No. 18).

time a teenager) testified to acts of oral sex and vaginal intercourse, and attempted anal intercourse." (Doc. No. 32 at 1.)  On August 31, 2012, after a jury trial in the Philadelphia County Court of Common Pleas, Petitioner was convicted of the following offenses:  (1) endangering the welfare of a child, in violation of 18 Pa.C.S. § 4303(a);  (2) corruption of a minor, in violation of 18 Pa.C.S. § 6301(a)(1);  and (3) involuntary deviate sexual intercourse ("IDSI") with a child under thirteen, in violation of 18 Pa.C.S. § 3123(b).  (Id.)

Between Petitioner's trial and sentencing, the judge who presided over trial passed away. Judge Denis P. Cohen was assigned for sentencing.  (Id. at 2.)  On December 19, 2013, Judge Cohen found Petitioner to be a sexually violent predator ("SVP") and ordered him to comply with lifetime registration requirements in accordance with 42 Pa.C.S. § 9795.1 ("Megan's Law").  (Id.)  Judge Cohen then sentenced Petitioner to an aggregate term of eight-and-a-half (8.5) to seventeen (17) years' incarceration, which consisted of the following:  consecutive sentences of one to two years for endangering the welfare of a child, one to two years for corruption of minors, and six-and-a-half (6.5) years to thirteen (13) years for IDSI.  (Doc. No. 16 at 1.)

Next, Petitioner filed a direct appeal to the Pennsylvania Superior Court.  (Doc. No. 32 at 2.)  Among Petitioner's contentions on appeal was that the Commonwealth's evidence was insufficient to sustain his convictions and that the judge erred in sentencing him on his IDSI charge.  (Id.)  The Superior Court affirmed his convictions but remanded for resentencing on the IDSI charge, which was erroneously labelled as IDSI by forcible compulsion instead of the correct label—IDSI with a child under thirteen.  (Doc. No. 16 at 2 n.2–3; see also Doc. No. 18, Ex. 9 at 31).  On remand, "[h]e was resentenced to the same aggregate term of 8.5 to 17 years' incarceration."  (Id. at n.2.)  Finally, on August 4, 2016, the Supreme Court of Pennsylvania denied review of Petitioner's

4

claims.  (Doc. No. 32 at 2); see also Commonwealth v. Evans, 636 Pa. 658 (Aug. 4, 2016).

Thereafter, Petitioner filed a pro se petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S §§ 9541–51.   In the R&R, Judge Reid summarized the history of Petitioner's PCRA proceedings:

> Evans then sought collateral relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 2541-51. There he argued that the trial counsel had been ineffective, and that the imposition of Megan's Law reporting requirements was illegal, since Megan's Law was declared unconstitutional before sentencing.
>
> The PCRA court dismissed Evans's petition on April 27, 2022. *Commonwealth v. Evans*, 301 A.3d 889 (Table) (Pa. Super. June 9 2023), 2023 WL 3914307 at *2. Evans then appealed to the Pennsylvania Superior Court, raising only the Megan's Law claim. *Id.* at *2.  Appointed counsel filed a letter of no merit and an application to withdraw under *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1981) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988). *Id.* at 2. The Pennsylvania Superior Court granted counsel's petition to withdraw and affirmed the dismissal of his PCRA petition on June 9, 2023. *Id.* Evans did not seek review by the Pennsylvania Supreme Court.

(Id. at 2–3.)

On September 11, 2023, Petitioner filed the instant pro se Section 2254 Habeas Petition in the United States District Court for the Eastern District of Pennsylvania.  (Doc. No. 2.) Construing his pro se Petition as best the Court can, he raises the following grounds for relief:

1. Petitioner was convicted of endangering the welfare of a child and corrupting a minor on insufficient evidence because he was not the victim's caretaker;

2. The weight of evidence failed to establish guilt beyond a reasonable doubt for any of the offenses for which he was found guilty;

3. State's evidence introduced at sentencing was insufficient to establish that he was a sexually violent predator;

4. The Pennsylvania Superior Court should not have allowed the sentencing trial court to correct the sentencing issue on IDSI on a child who was less than 13 years old, when he was

5

initially sentenced on IDSI by forcible compulsion;

5.  Whether the lifelong registration and reporting requirements under Megan's Law were illegal after Megan's Law was ruled unconstitutional three days before he was sentenced under the law;

6.  The PCRA judge abused his discretion when he "failed to do away with" the reporting requirement from Megan's Law and the aggravated sentence that he received;

7.  PCRA counsel rendered ineffective assistance by failing to raise and litigate ineffective assistance of trial counsel on the following claims of failure: (1) to object to Evans being convicted under the wrong section of the IDSI statute, (2) to contradict the victim's inconsistent testimony at a preliminary hearing, (3) to insist on a hearing before the determination that he was a sexually violent predator at sentencing, (4) to object to an erroneous state jury instruction after the jury was deadlocked on the verdict, (5) to raise an issue on the chain of custody procedures for evidence introduced by Detective Clare Duckworth; and

8.  The trial court violated his speedy trial and sentencing rights when the trial court failed to resentence him within ninety days on the Remand of Sentence.

(See Doc. No. 2 at 11–43.)

On June 17, 2024, Petitioner filed with Judge Reid a Motion for Expansion of the Record to include a brief in support of his Petition for a Writ of Habeas Corpus.  (Doc. No. 26.)  As noted, the Motion was granted.  (Doc. No. 31.)  On December 3, 2024, Judge Reid issued his R&R on the Petition.  (Doc. No. 32.)  In his R&R, Judge Reid recommended that the Petition be denied in part and dismissed in part.  (Doc. No. 32 at 1.)  Judge Reid also recommended that no Certificate of Appealability be issued because Petitioner made no showing of the denial of a constitutional right.  (Doc. No. 32 at 26.)  On April 22, 2025, Petitioner filed Objections to the R&R.  (Doc. No. 43.)    In the Objections, Petitioner contends that Judge Reid erred in the following ways: (1) in rejecting Petitioner's argument that the lifetime reporting requirement

was unconstitutional because it violated the Ex Post Facto Clause; (2) in determining that the Petitioner's Motion for Expansion of the Record[2]—which Judge Reid granted—could not be a basis of relief for Petitioner; (3) in failing to address Petitioner's claim that the sentencing court erred when ordering enhanced mandatory minimum penalties.[3]  (See Doc. No. 43 at 1–5.)

For reasons discussed below, the Court will approve and adopt the R&R (Doc. No. 32) and will overrule the Objections (Doc. No. 43).

III.    STANDARD OF REVIEW

A. Magistrate Report and Recommendation

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief.   See § 636(b)(1)(B); E.D. Pa. Civ. R. 72.1.   Any party may file objections

---

[2]   In his Motion, Petitioner requested that Judge Reid include an unfiled PCRA appellate brief. In that brief, he argues that his conviction should not stand because Megan's Law was declared unconstitutional by the Supreme Court of Pennsylvania three days before he was sentenced.  (See Doc. No. 26.)

[3]   At first glance, Petitioner's Third Objection is unclear, as he states that he objects to the R&R "in its entirety [sic] the Magistrate abused it [sic] discretion and/or erred when it failed to address Page-6 continue ground 7." (Doc. No. 43 at 4.)  Ground Six asserts that the PCRA Court erred and abused its discretion when it rejected his Ex Post Facto argument, while Ground Seven involves an ineffective assistance of counsel contention.  But both Grounds Six and Seven were addressed in detail in Judge Reid's R&R.  (Doc. No. 32 at 15–23.) Moreover, when explaining his Third Objection, Petitioner spends no time discussing the issues raised in Ground Six or Ground Seven.

Rather, Petitioner spends the bulk of his Third Objection claiming that the trial court improperly enhanced his sentence by applying the mandatory minimum for his IDSI charge. (Doc. No. 43 at 4–5.)  Specifically, he claims that a jury—not a judge—was required to find facts that led to his enhanced sentence for IDSI.  (Id.)  Petitioner is correct that this specific claim—buried in Grounds Six and Seven in his original Petition (Doc. No. 2 at 33) as it is now described in the Objection to the R&R—was not covered in the Respondents' Brief (Doc. No. 16) or in Judge Reid's R&R (Doc. No. 32).  The Court therefore will address this claim for the first time here.

in response to the magistrate judge's report and recommendation.    § 636(b)(1)(C).  Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate judge with further instructions." Id.    "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 784, 878 (3d Cir. 1987).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation.  Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."  E.D. Pa. Civ. R. 72.1; see also Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012) (noting that the magistrate judge offered independent and unobjected-to grounds for denying a petitioner's habeas corpus petition that the district judge did not need to review de novo.)  Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  § 636(b)(1)(C). De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter.  Salve Regina Coll. v. Russell, 499 U.S. 255, 238 (1991).  "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the] [judge], in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

### B.  Merits Review

Under the federal habeas statute, a court will grant the writ only if (1) the decision of the

8

state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" or if (2) the court's decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. §2254(d)(1)–(2). Determinations of factual issues made by a state court "are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence." Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

This burden for the "contrary to" or "unreasonable application" prong is substantial. First, the Supreme Court has explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). With respect to "the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

On the other hand, the "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. As the Third Circuit Court of Appeals has noted, "an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless the court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411). Deference is given to state court

9

rulings, and the application of the "contrary to" and "unreasonable application clauses" has proven to be "difficult to meet". Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

## C. Exhaustion and Procedural Default

For a petitioner's habeas claim to be considered by a federal court, the petitioner must meet the exhaustion requirement prescribed by Section 2254(b). This provision requires a petitioner to "give the state courts one full opportunity" to cure the Petitioner's alleged constitutional violations through completing "the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Exhaustion requires a petitioner to present to the state courts the same legal theory applied to the same facts. Landano v. Rafferty, 897 F.2d 661, 669 (3d Cir. 1990). A petitioner bears the burden of demonstrating that he has exhausted each claim in each level of the state judicial system. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). A habeas petitioner has the burden of proving exhaustion. Boyd v. Waymart, 579 F.3d 330, 367 (2009).

Ordinarily, a federal court must dismiss without prejudice a habeas petition that contains both exhausted and unexhausted claims. Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004) (citing Rose v. Lundy, 455 U.S. 509, 522 (1982)). "However, if state law would clearly foreclose review of the claims, the exhaustion requirement is technically satisfied because there is an absence of state corrective process." Brown v. Kauffman, 425 F. Supp. 3d 395, 403 (E.D. Pa. 2019) (citing Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002)). When a petitioner fails to properly present his federal claims in state court, those claims may be subject to procedural default. A habeas claim is procedurally defaulted when a state court relies on or would rely on "a state law ground that is independent of the federal question and adequate" to preclude review of the federal claim. Beard v. Kindler, 668 U.S. 53, 53 (2009).

10

There are, however, exceptions that a petitioner may assert to overcome a procedurally defaulted claim, such as demonstrating: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Under the first prong of the exception, "cause" is demonstrated by "some objective factor external to the defense [that] impeded counsel's efforts to comply with the state's procedural rule." Id. Under the second prong, a "fundamental miscarriage of justice" is demonstrated by a showing of actual innocence, which means factual innocence, not mere legal insufficiency. Schlup v. Delo, 513 U.S. 298, 324–26 (1995). And a petitioner may support a showing of "actual innocence" through his "allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 324.

## IV.    ANALYSIS

As noted above, Petitioner makes three objections to the Report and Recommendation ("R&R"). (Doc. No. 43.) Petitioner contends that Judge Reid erred in the following ways: (1) in rejecting Petitioner's argument that the lifetime reporting requirement was unconstitutional because it violated the Ex Post Facto Clause; (2) in determining that the Petitioner's Motion for Expansion of the Record—which Judge Reid granted—could not be a basis of relief for Petitioner; (3) in failing to address Petitioner's claim that the sentencing court erred when ordering enhanced mandatory minimum penalties. (See Doc. No. 43 at 1–5.) The Court will address each of these Objections in turn.

### A. Petitioner's Claim that the Lifetime Retroactive Reporting Requirements under Subchapter I of SORNA are Unconstitutional is Meritless

First, Petitioner objects to Judge Reid's recommendation on Subchapter I of

11

Pennsylvania's Sex Offender Registration and Notification Act ("SORNA")—namely, that the

PCRA court's determination that Subchapter I's lifetime reporting requirement did not violate

the Ex Post Facto Clause and was not contrary to clearly established federal law.  (Doc. No. 43 at

1.)  Specifically, prior to his sentencing in 2013, Pennsylvania's version of Megan's Law had

been ruled unconstitutional by the Supreme Court of Pennsylvania.  (Doc. No. 2 at 31.)  Though

Petitioner does not provide an explanation for his objection—leaving the Court to review it by

giving him the benefit of construing his legal argument as broadly as possible—he attaches

Judge Reid's Ex Post Facto analysis as the source of his Objection.  (Doc. No. 43 at 1, Ex. A.)

In Judge Reid's R&R, he provides a summary of Petitioner's lifetime reporting

requirement claim:

> As above, Evans was designated a sexually violent predator at his December 19, 2013, sentencing hearing and a lifetime reporting requirement was imposed upon him in accordance with the provisions of Megan's Law, 42 Pa.C.S. §9795.1, et seq. However, three days earlier, on December 16, 2013, the Pennsylvania Supreme Court struck down Megan's Law as unconstitutional in Commonwealth v. Neiman, 84 A.3d 603 (Pa. 2013).  Evans argues that the reporting requirement to which he is subjected is therefore unconstitutional.
>
> Evans raised essentially the same claim in his PCRA appeal.  In denying it, the Pennsylvania Superior Court quoted the PCRA court's explanation that, by the time Megan's Law was declared unconstitutional, the Pennsylvania General Assembly had already replaced it with the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. § 9700.10, et seq. 2023 WL 3914307 at *4.  Although the reporting procedure in SORNA was determined to violate the ex post facto clauses of the federal and state constitutions in Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017), this fault was repaired by the enactment of Subchapter I to SORNA, "which becomes the 'operative version of SORNA for those sexual offenders whose crimes occurred between April 22, 1996, and December 20, 2012,'" such as Evans. Id.

(Doc. No. 32 at 13.)

The United States Constitution states that "[n]o state shall . . . pass . . . any ex post facto

law."  U.S. Const. art. I, § 10, cl. 1; see also Calder v. Bull, 3 U.S. 386, 390-91 (1789).  The Ex

Post Facto Clause "forbids any law that 'changes the punishment, and inflicts a greater punishment' for pre-existing conduct." United States v. Shenandoah, 595 F.3d 151, 158 (3d Cir. 2010) (quoting Hameen v. State of Delaware, 212 F.3d 226, 235 (3d Cir.2000)). When determining whether a regulatory scheme constitutes retroactive punishment in violation of the Ex Post Facto Clause, a court relies on a host of factors, including whether the scheme "has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." Smith v. Doe, 538 U.S. 84, 97 (2003). This inquiry requires "look[ing] behind the legislature's preferred classification" to ascertain the substance of the law. Smith, 538 U.S. at 107 (Souter, J., concurring). To succeed, Petitioner must show that the state court's proceedings resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as established by the Supreme Court of the United States." 28 U.S.C. § 2254.

To begin, neither the United States Supreme Court nor the Third Circuit Court of Appeals have opined on the constitutionality of Pennsylvania's SORNA Subchapter I. (Doc. No. 32 at 14.) But the United States Supreme Court has upheld another state's retroactive registration requirement. See Smith, 538 U.S. at 105–06 (finding Alaska's own SORNA did not violate the Ex Post Facto Clause because it was nonpunitive). In Smith, the Supreme Court confronted a state statute that, in key respects, mirrors Pennsylvania's SORNA. Compare Smith, 538 U.S. at 90 (explaining Alaska's requirements for aggravated sex offenders, which included lifetime registration, quarterly verification of identifying information, and a state registry that publishes some of that information); with Commonwealth v. Lacombe, 234 A.3d 602, 615–16 (Pa. 2020) (explaining Pennsylvania's SORNA

13

requirements for sexually violent predators ("SVPs"), which also includes lifetime registration, quarterly verification of identifying information, and a statewide online registry of select information).  In upholding Alaska's retroactive reporting requirement, the Supreme Court held that the reporting requirement (1) was not historically understood as punitive, (2) did not impose on offenders an independent disability or restraint, (3) did not serve the traditional aim of retribution, and (4) was reasonably connected to the nonpunitive purpose of protecting the public.  Smith, 538 U.S. at 97–103.

Notwithstanding Smith, the Supreme Court of Pennsylvania in 2017 held Pennsylvania's retroactive reporting provision to be punitive, and thus, in violation of the federal and state Ex Post Facto Clauses.  See Commonwealth v. Muniz, 164 A.3d 1189, 1218 (2017).  In response, the Pennsylvania General Assembly enacted Subchapter I of SORNA, which—while removing and modifying certain provisions of SORNA—"once again made Pennsylvania SORNA retroactively applicable" for those who committed sexually violent crimes during the period in which Petitioner committed his crimes.  Thomas v. Blocker, 2022 WL 2870151 at *1 (3d Cir. July 21, 2022) (citing 42 Pa.C.S. § 9799.52 (2018)); see also Commonwealth v. Evans, 2023 WL 3914307, at *4 (Pa. Super. Ct. 2023) (recounting the history of Pennsylvania's retroactive reporting requirement).

In the newly enacted Subchapter I, offenders who were convicted of IDSI, like Petitioner, "are subject to lifetime registration under Subchapter I."  Evans, 2023 WL 3914307, at *4.  Upon review of Subchapter I's constitutionality, the Supreme Court of Pennsylvania upheld it as nonpunitive under both the state and federal Ex Post Facto Clauses. Commonwealth v. Lacombe, 234 A.3d 602, 626–27 (2020) ("We hold Subchapter I does not constitute criminal punishment, and the *ex post facto* claims forwarded by appellees

14

necessarily fail.")  In doing so, the Court relied on the same factors that the United States Supreme Court used in <u>Smith</u>.  <u>See id.</u> at 626.  Therefore, Petitioner cannot show that the PCRA court's rejection of his Ex Post Facto claim was "contrary to, or involved an unreasonable application of, clearly established Federal law."[4]  <u>See</u> 28 U.S.C. § 2254(d)(1).

Additional federal caselaw demonstrates that the PCRA court's decision was consistent with federal law.  Though the Third Circuit has never addressed Pennsylvania's amended SORNA, it previously upheld a retroactive registration requirement under the analogous federal version of SORNA.  <u>See</u> <u>Blocker</u>, 2022 WL 2870151, at *3 n. 8 (3d Cir. July 21, 2022) (citing <u>Shenandoah</u>, 595 F.3d at 158–59).  Moreover, multiple district courts in the Third Circuit have found Pennsylvania's Subchapter I to be nonpunitive.  <u>See</u> <u>Peele v. Oberlander</u>, Civ. A. No. 21-2785, 2023 WL 5487646 at *5–6  (E.D. Pa. Aug. 24, 2023); <u>Webster v. Tice</u>, Civ. A. No. 20-476, 2021 WL 6274465 at *2 (E.D. Pa. Dec. 7, 2021); <u>Reaves v. Rowles</u>, Civ. A. No. 21-904, 2021 WL 5416248 at *5–6 (M.D. Pa. Nov. 19, 2021).  In sum, the weight of caselaw demonstrates that Subchapter I's retroactive reporting requirement is constitutionally permissible.  Accordingly, Petitioner's Ex Post Facto Objection is without merit.

### B.  Petitioner's Claim that Relief for a Constitutional Violation Would Arise From His Motion for Expansion of the Record is Meritless

Second, Petitioner contends that the arguments within his Motion for Expansion of the Record can serve as a basis to grant his Habeas Corpus Petition.  (Doc. No. 43 at 1–4.)  In his

---

[4]  As acknowledged in the Supreme Court of Pennsylvania's opinion in <u>Muniz</u>, Pennsylvania's Ex Post Facto Clause may "provide[] even greater protections than its federal counterpart." <u>Commonwealth v. Muniz</u>, 640 Pa. 699, 164 A.3d 1189, 1223 (2017).  Because the Supreme Court of Pennsylvania ultimately found the modified Subchapter I to violate neither the Pennsylvania Constitution nor United States' Constitution in <u>Lacombe</u>, this Court is further convinced that the PCRA court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law." <u>See</u> U.S.C. §2254(d)(1).

Motion (Doc. No. 26), Petitioner explains that he sent an appellate brief to his PCRA appellate counsel, who never filed it on his behalf.  (Doc. No. 26 at 1.)  Instead, Petitioner alleges that his PCRA counsel filed a misleading Finley letter of no merit.  (Id.)  In his R&R, Judge Reid stated that he would grant Petitioner's Motion for Expansion, but that the arguments made within the underlying brief did not serve as a basis of relief.  (Doc. No. 32 at 25.)  Judge Reid did grant the Motion on December 3, 2024.  (Doc. No. 31.)

The arguments in Petitioner's unfiled appellate brief can be summarized as follows: Petitioner was convicted under a statute which, by the time he was sentenced, was declared unconstitutional.  (See Doc. No. 26 at 18, 19; Doc. No. 43 at 1.)  Specifically, Petitioner again notes that Megan's Law—which was the source of his reporting requirements—was declared unconstitutional after his conviction but three days before his sentencing.  (Doc. No. 26 at 16.)  But the problem for Petitioner is simple: he was neither convicted nor sentenced for violating Megan's Law.  Rather, Petitioner was convicted and sentenced for (1) endangering the welfare of a child, (2) corruption of minors, and (3) involuntary deviate sexual intercourse ("IDSI") of a child under 13.  (Doc. No. 18, Ex. 30 at 18–19; Ex. 31 at 9–10).

Petitioner rests his claim for relief on Ex Parte Siebold, 100 U.S. 371, 376 (1879).[5]  There, the United States Supreme Court held that "[a]n unconstitutional law is void, and is as no law [sic].

---

[5]  Petitioner's appellate brief cites a Pennsylvania Superior Court decision to bolster his Siebold claim.  (See Doc. No. 26 at 17; Doc. No. 43 at 3) (citing Commonwealth v. Myers, No. 1295 MDA 2014, 2015 WL 6128841 (Pa. Super. Ct. July 31, 2015)).  As a threshold matter, a violation of a state law right is not a cognizable basis for federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.") (citations omitted).  And insofar as Myers may illustrate Siebold's applicability to Petitioner's federal habeas claim, it still does not assist him.  In Myers, the defendant was tried and convicted for failing to register under Megan's Law, which was declared unconstitutional after his conviction but before his sentencing.  Myers, 2015 WL 6128841, at *4.  The instant case is distinguishable.  Unlike the defendant

16

An offence created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void." Id.  Because none of Petitioner's three offenses have been found unconstitutional, none of Petitioner's convictions would implicate Siebold.  The reporting requirements found in Megan's Law—now SORNA Subchapter I—do not form the basis of Petitioner's convictions.  Rather, they constitute the civil consequences of those convictions, and are triggered only when one is convicted of a certain predicate crime, like IDSI.  Lacombe, 234 A.3d at 612; see also 42 Pa.C.S. § 9799.55.  Because Subchapter I's retroactive reporting requirements were held constitutional in Lacombe, Petitioner must abide by them.  Accordingly, Petitioner has not shown that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal Law." 28 U.S.C. § 2254(d)(1).

### C. Petitioner's Contention that the Sentencing Judge Erroneously Made Factual Determinations in Violation of Alleyne is (1) Procedurally Defaulted and (2) Meritless

Third, Petitioner challenges Judge Reid's R&R "when it failed to address Page-6 continue ground 7" in his habeas petition.[6]  (Doc. No. 43 at 4.)  The Court construes the basis for Petitioner's Third Objection as follows: in sentencing the Petitioner, the sentencing judge improperly invoked a mandatory minimum statute that required him to make a judicial finding on the age-of-the-victim. (See id. at 4–5) (citing 42 Pa.C.S. § 9718).  Petitioner contends that this factual determination was an "element" of the underlying crime, thus requiring a jury—not a

---

in Myers, Petitioner was neither convicted nor sentenced for failure to comply with Megan's Law.

[6]    As noted supra, though Petitioner did not clearly label his ground for relief, the Court will find that this specific claim was originally buried between Grounds Six and Seven in his Petition.  (Doc. No. 2 at 33.)  Additionally, he is correct that the Respondents' Brief (Doc. No. 16) and Judge Reid's R&R (Doc. No. 32) do not mention his claim.

judge—to find the age-of-the-victim beyond a reasonable doubt.  (Doc. No. 43 at 5.)  Though Petitioner never identifies which federal law his Objection implicates, the Court will identify it as a challenge under United States v. Alleyne, 570 U.S. 99 (2013).[7]  In Alleyne, the United States Supreme Court held that any fact increasing "the legally prescribed range of allowable sentences" is an element of a distinct and aggravated crime, which "must, therefore, be submitted to the jury and found beyond a reasonable doubt."  Alleyne, 570 U.S. at 115–16.  Because Petitioner's claim is procedurally defaulted and substantively without merit, the Court will deny his Third Objection to Judge Reid's R&R.

### 1.  Petitioner's Alleyne Claim is Procedurally Defaulted

As noted above, Petitioner must "give the state courts one full opportunity" to cure constitutional violations by completing "the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  For Section 2254 cases involving Pennsylvania convictions, one round of state court review requires a petitioner to present federal claims to the Superior Court of Pennsylvania—either on direct or collateral review.  See Lambert v. Blackwell, 387 F.3d 210, 233–34) (3d Cir. 2004).  "Procedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue . . . ."  Rolan v. Coleman, 680 F.3d 311, 317 (3d Cir. 2012) (citing Wenger v. Frank, 266 F.3d 218, 223–24 (3d Cir. 2001)).  And no state remedies are available to a petitioner when a state court relies on or would rely on "a state law ground that is independent of the federal question and adequate" to preclude review of the federal claim.  Beard v. Kindler, 668 U.S. 53,

---

[7]  Though Petitioner failed to cite to Alleyne or similar federal cases, his references to language from Alleyne and citations to Commonwealth v. Barnes, 151 A.3d 121 (2016)—a case about Alleyne's effect on Pennsylvania sentencing law—will allow the Court to find that Petitioner is bringing an Alleyne challenge.  (Doc. No. 43 at 5.)

53 (2009). In most cases, procedural default of a federal claim results in foreclosure of its review. See Rolan, 680 F.3d at 317.

Here, the state court record demonstrates that Petitioner failed to properly present his Alleyne claim in state court. According to the state court record (Doc. No. 18), Petitioner's filings after his sentencing in 2013 are as follows:

| Filing, Filing Date (Exhibit in Doc. No. 18) | Claims Made in Filing |
|---|---|
| **Post-Sentence Motion**, 12/23/2013 (Ex. 4) | Insufficiency of Evidence, Weight of Evidence |
| **Statement of Matters**, 9/10/2014 (Ex. 6) | Insufficiency of Evidence, Weight of Evidence, Due Process (*Brady*); Trial Court Error (Failure to Answer the Jury's Question); Sentencing Error (Failure to Allow Allocution, Failure to Merge Charges) |
| **Appellate Brief to PA Superior Court on Direct Appeal**, date unknown (referenced in Ex. 9, p. 4)[8] | Insufficiency of Evidence, Weight of Evidence, Sentencing Errors (Failure to Allow Allocution, Failure to Grant Time Credit for House Arrest, Failure to Merge Charges, Remanding for resentencing on the correct IDSI charge) |
| **PCRA Petition**, 2/6/2017 (Ex. 10) | Ineffective Assistance of Counsel |
| **Supplement to Amended PCRA Petition**, 2/13/2018 (Ex. 11) | Subject Matter Jurisdiction; Flaws with his Indictment/Bill of Information |
| **Amended PCRA Petition**, 3/18/2018 (Ex. 12) | Ineffective Assistance of Counsel; Speedy Trial Rights; Subject Matter Jurisdiction |
| **Second Supplement to Amended PCRA Petition**, 5/24/2018 (Exs. 13, 14) | Ex Post Facto |
| **Supplement to Amended PCRA**, 4/22/2019 (Ex. 15) | Subject Matter Jurisdiction; Enacting Clause; Purdon's PA Statute Issue |
| **Memorandum of Law—PCRA**, 7/25/2019 (Ex. 16) | Subject Matter Jurisdiction; Enacting Clause; Purdon's PA Statute Issue |
| **Amended PCRA Petition**, 11/10/2020 (Ex. 17) | (Incorporating Previous Filings) |
| **Response to Commonwealth's Motion to Dismiss**, 4/15/2021 (Ex. 19) | Subject Matter Jurisdiction; Ex Post Facto; **Alleyne (pages 8-15)** Cruel and Unusual Punishment |

---

8     After searching the Pennsylvania Judiciary's online records and contacting the Philadelphia County Court of Common Pleas, the Court cannot locate the Brief. The Court is relying on the Superior Court summary of Petitioner's arguments on direct appeal.

| **Motion for PCRA Judge to Render a Decision**, 8/18/2021 (Ex. 21) | Ex Post Facto; **Alleyne**; Subject Matter Jurisdiction |
|---|---|
| **Responses to 907 Notice of Dismissal**, 3/11/2022 and 3/25/2022 (Exs. 22, 23) | Ex Post Facto; Subject Matter Jurisdiction |
| **Statement of Matters**, 9/2/2022 (Ex. 24) | Ex Post Facto; Subject Matter Jurisdiction |
| **Court of Common Pleas PCRA Opinion**, 11/21/2022 (Ex. 25) | Responded to Statement of Matters issues (raised on 9/22/2022) only |
| **Appellate Brief**, 1/29/2023 (arguments summarized in Superior Court Opinion on 6/9/2023 at Ex. 27, p. 4–5)[9] | Ex Post Facto; Subject Matter Jurisdiction |

As shown in the table above, Petitioner brought his Alleyne claim in only two of his state court filings:  (1) in his response to the Commonwealth's Motion to Dismiss his PCRA Petition in 2021 (Doc. No. 18, Ex. 19); and (2) in his Motion for the PCRA Judge to Render a Decision in 2021 (Doc. No. 18, Ex. 21).  Once the Court of Common Pleas issued its Notice of PCRA Dismissal under 234 Pa. Code § 907, Petitioner did not raise his Alleyne challenge again.  In his PCRA Appellate brief (see Doc. No. 18, Ex. 27) and the appellate brief attached to his Motion for Expansion of the Record (Doc. No. 26), the Alleyne claim was not raised.  Because Petitioner also did not pursue his Alleyne claim on direct appeal (see Doc. No. 18, Exs. 6, 9), he failed to submit it to Pennsylvania courts for a complete round of review.  See Lambert v. Blackwell, 387 F.3d 210, 233–34) (3d Cir. 2004).

Even though Petitioner's Alleyne claim was not properly raised in state court to preserve it for federal view, the exhaustion requirement may be excused "on the ground of futility." Wenger, 266 F.3d at 223.  If state law would preclude review of a federal claim, then the futility of bringing the claim results in a procedural default.  See Whitney v. Horn, 280 F.3d 240, 252 (3d Cir. 2002) ("Accordingly, we take this opportunity to reiterate: claims deemed exhausted because

---

[9]   After searching the Pennsylvania Judiciary's online records and contacting the Philadelphia County Court of Common Pleas, the Court also cannot locate this Appellate Brief.  The Court is relying on the Superior Court summary of Petitioner's arguments on his PCRA appeal.

20

of a state procedural bar are procedurally defaulted.") (internal citation omitted). The Third

Circuit has held that the Pennsylvania Post Conviction Relief Act's ("PCRA") one-year statute of

limitations for raising claims constitutes such a state procedural bar that results in default. Moses

v. Dist. Att'y Philadelphia, 133 F.4th 251, 257 & n.1 (3d Cir. 2024) (citing 42 Pa. C.S §

9545(b)(1)). Specifically, that provision reads as follows: "[a]ny petition under this subchapter,

including a second or subsequent petition, shall be filed within one year of the date the judgment

becomes final . . . ." 42 Pa. C.S § 9545(b)(1). Here, Petitioner's judgment became final when

the Supreme Court of Pennsylvania denied his direct appeal on August 4, 2016, but Petitioner

first raised Alleyne in 2021. No file in Petitioner's state court record attests to the PCRA judge

(1) permitting an amended PCRA Petition under 234 Pa. Code § 905 to include Petitioner's

Alleyne claim, or (2) adjudicating the claim. Because Petitioner failed to add his Alleyne

challenge to a timely PCRA petition filed within a year of August 4, 2016, any subsequent PCRA

petition raising Alleyne would be time-barred. As a result, the claim is procedurally defaulted.[10]

---

[10]  Even if the Court finds that he presented his Alleyne claim in his PCRA petition within the applicable statute of limitations period, Alleyne would only have benefitted him on direct appeal—not collateral appeal. Bernard v. Sorber, No. CV 22-1668, 2023 WL 1805198 (E.D. Pa. Feb. 7, 2023) ("[Petitioner] would only have been able to receive the benefit of Alleyne on direct appeal, so by the time that he asserted this claim in his amended PCRA petition, it was procedurally defaulted.")

Still, if a petitioner "demonstrates cause for the default and prejudice arising from the violation of federal law," then a Court may review the claim. Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014). Here, Petitioner fails to demonstrate (1) why he failed to properly present his Alleyne claim in his PCRA proceedings, or (2) the prejudice he suffered. First, although Alleyne was decided in 2013 and Petitioner was sentenced later that same year, the first time it appeared in any of Petitioner's briefs was in 2021. His eight-year delay in bringing it up favors against finding cause for his default. See United States v. Hall, No. CR.No.06-2-1, 2010 WL 1816796, at *7 (E.D. Pa. May 4, 2010) (holding that procedural default would not be excused when there was an unexplained delay in bringing habeas claims). Second, no prejudice resulted from the alleged violation, as Alleyne challenges cannot be raised for the first time on collateral review. Miller v. Garman, No. CV 19-03125, 2020 WL 42778 at *n.2

### 2.    Petitioner's <u>Alleyne</u> Claim is Also Meritless

Beyond issues of exhaustion and default, Petitioner's <u>Alleyne</u> claim fails on its merits.[11]

Petitioner alleges, albeit in somewhat confusing language, that his sentencing judge "invoke[d]

a[n] Aggregated Mandatory Minimum Sentence of 6.5 to 13 years while ignoring the standard

sentence guidelines range, or pretend[ing] that a sentence that is much more than a Mandatory

Minimum for a crime is not an enhance[d] sentence." (Doc. No. 2 at 33.)  In his Third Objection

to Judge Reid's R&R, Petitioner identifies the mandatory minimum statute as 42 Pa.C.S. § 9718,

which—at the relevant time—applied a five-year minimum sentence for acts of IDSI involving

victims under 16 years old.[12]  (<u>See</u> Doc. No. 43 at 5; Doc. No. 18, Ex. 32 at 3–4).  To succeed on

the merits, Petitioner would need to show some state court decision that was "contrary to, or

involved an unreasonable application of, clearly established Federal Law, as determined by the

---

(E.D. Pa. Jan. 2, 2020) (finding that a petitioner did not demonstrate prejudice when petitioner raised <u>Alleyne</u> for the first time in his collateral proceedings in state court.)

[11]  Regardless of any exhaustion requirement, a court may also deny a habeas petition on the merits.  <u>See</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")  Though Petitioner's <u>Alleyne</u> claim is defaulted, the Court will address the merits, too.

[12]  Petitioner claims in his Third Objection that 42 Pa. C.S. § 9718 carries a minimum sentence of 10 years.  However, at the time he committed the acts underlying his IDSI—which is from 2002 to 2005—a different version of the statute was in effect.  Although the sentencing transcript does not specify which version of 42 Pa. C.S. § 9718 the prosecutor referred to, the difference is immaterial.  The first version of the Section 9718, which was in effect until November 2004, had a mandatory minimum of five years for IDSI involving children who were less than 16 years old.  42 Pa. Stat. and Cons. Stat. Ann. § 9718 (West 2004).  The second version of Section 9718, which was in effect until November 2006, also carried a mandatory minimum of five years for IDSI involving children who were less than 16 years old. 42 Pa. Stat. and Cons. Stat. Ann. § 9718 (West 2006).

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Three reasons weigh against finding for Petitioner on the merits of his <u>Alleyne</u> claim.

First, the judge sentenced Petitioner on the basis of the Pennsylvania guidelines—not the mandatory minimum statute.  When a sentencing judge relies on facts "which influence the sentencing judge's discretion in imposing an advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence," the sentence does not violate <u>Alleyne</u>.  <u>United States v. Freeman</u>, 763 F.3d 322, 335 (3d Cir. 2014) (citations omitted) (collecting federal circuit court cases).  To violate <u>Alleyne</u>, the sentencing judge would have to find some fact—not found by a jury beyond reasonable doubt—that would trigger the mandatory minimum for IDSI.  In Petitioner's case, that would mean the judge would need to find that the victim was younger than 16.  <u>See</u>, <u>e.g.</u> <u>Alleyne</u>, 570 U.S. at 115 (holding that because the fact of brandishing a weapon increased the minimum sentence for a crime, it needed to be found by a jury).

But despite the prosecutor notifying the sentencing judge about the mandatory minimum statute (<u>see</u> Doc. No. 18, Ex. 32 at 3, 17), the record is devoid of judicial fact-finding about the age of Petitioner's victim.  Instead, the sentencing judge asked the prosecutor for the advisory guideline range for IDSI[13], which—because Petitioner had a prior record score of two—resulted in a minimum sentencing range between 60 to 78 months incarceration.[14]  (<u>Id.</u> at 4.)  Petitioner

---

[13]  Defendant was convicted by a jury of committing IDSI of a child under 13.  (Doc. No. 18, Ex. 31 at 7.)   The fact-finding on age-of-the-victim was done by the jury, not the judge.

[14]  Although the sentencing transcript does not specify which edition of the Pennsylvania Sentencing Guidelines was used, the difference is immaterial in this case.  The Fifth Edition, which was in effect from 1997 to 2005—covering the years associated with Petitioner's crimes—resulted in 60 to 78 months for all IDSI convictions with a prior record score of 2.  <u>PA Comm'n on Sentencing</u>, 5th Edition Sentencing Guidelines, https://pcs.la.psu.edu/guidelines-statutes/sentencing/5th-edition-sentencing-guidelines/.  The Sixth Edition, which took effect in 2005 and remained in effect when Petitioner was convicted in 2012, also resulted in 60 to 78 months for all IDSI convictions with a prior

ultimately was sentenced to a minimum of six-and-a-half (6.5) years (or 78 months) to a maximum of thirteen (13) years incarceration. (Id. at 21.) Finally, the sentencing judge noted numerous factors informing his decision, but did not mention the mandatory minimum as one of them. (Id. at 20–21.) In fact, the sentencing judge only referenced the mandatory minimum when explaining that he would instead follow the guidelines for Petitioner's case. (Id. at 21) ("[T]here is a mandatory minimum 5 to 10 but the Court will—that's a mandatory minimum, it's not a mandatory maximum, and the Court will impose a sentence in the standard range.") Therefore, because Petitioner's mandatory minimum argument is belied by the guidelines and the transcript, the state court's decision was not contrary to clearly established federal law. See Freeman, 763 F.3d at 336 (finding no Alleyne violation when a review of the sentencing transcript revealed that the district judge did not believe his sentencing discretion to be confined by a mandatory minimum).

Second, Petitioner received a resentencing in 2017 that further demonstrates the inapplicability of Alleyne. During Petitioner's direct appeal, the Superior Court remanded for resentencing on the IDSI offense because he was incorrectly sentenced for IDSI by forcible compulsion instead of IDSI involving a child under 13. See (Doc. No. 18, Ex. 33 at 5.) Like the first sentencing, the resentencing judge considered the same applicable guideline range. (See, e.g. id. at 6, 15) ("The Court is reimposing the same sentence on the charge of IDSI child under 13 because that was the charge which the jury convicted. So it's the same sentence of six-and-a-half to 13 years state incarceration, and that is within the sentencing guidelines.") Moreover, the transcript shows that the resentencing judge never invoked or asked counsel about the mandatory minimum statute.

record score of 2. PA Comm'n on Sentencing, 5th Edition Sentencing Guidelines, https://pcs.la.psu.edu/guidelines-statutes/sentencing/6th-edition-sentencing-guidelines/.

24

Therefore, even if Petitioner were to show some defect in the first sentencing, his resentencing would have eliminated such a defect.

Finally, in Alleyne, the United States Supreme Court held that the sentencing was unconstitutional because a particular fact—one not found by a jury beyond a reasonable doubt—increased the minimum end of the sentencing range from five years to seven years.  See Alleyne, 570 U.S. at 113 ("A fact that increases a sentencing floor, thus, forms an essential ingredient of the offense.")  In Petitioner's case, though, the jury found him guilty of IDSI beyond a reasonable doubt, which, when combined with his prior record score, resulted in a minimum sentencing range of 60 to 78 months (five-years to six-and-a-half years) incarceration in the guidelines.  Yet, as explained above, the mandatory minimum statute for crimes against infant persons under 16 years old was also five years, or 60 months.  Therefore, even if the sentencing judge did rely on the minimum statute, the fact that the victim was younger than 16 years old did not increase the prescribed sentencing floor relative to the guidelines.  Both the guideline range and the mandatory minimum had a floor of 60 months.  Accordingly, Petitioner's Alleyne claim is without merit.

## V.    CONCLUSION/CERTIFICATE OF APPEALABILITY

For the foregoing reasons, the Court will overrule Petitioner's Objections to the Magistrate Judge's Report and Recommendation (Doc. No. 43), approve and adopt Magistrate Judge Reid's Report and Recommendation (Doc. No. 32), and will deny in part and dismiss in part the Petition for Writ of Habeas Corpus (Doc. No. 2).  Moreover, the Court will not issue a Certificate of Appealability in this case.  Petitioner has failed to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000). An appropriate Order follows.

25